IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 2:13CR00016 |
| v. | **OPINION AND ORDER** |
| JAMEL CHAWLONE BROWN, | By: James P. Jones |
| Defendant. | United States District Judge |

*Debbie H. Stevens, Special Assistant United States Attorney, Abingdon, Virginia, for United States; Brian Jackson Beck, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

In this Opinion, I resolve a dispute relating to the defendant's advisory guideline sentencing range.

I.

Jamel Chawlone Brown is an inmate confined to the United States Penitentiary Lee County ("USP Lee"), located in this judicial district. He pleaded guilty in this court without a plea agreement to an Indictment charging possession of heroin by an inmate, in violation of 18 U.S.C. § 1791(a)(2), (b)(2) (Count One), and possession of heroin, in violation of 21 U.S.C. § 844(a) (Count Four). In advance of sentencing, a presentence investigation report ("PSR") was prepared by a probation officer of this court. The probation officer calculated the defendant's scoring under the U.S. Sentencing Guidelines Manual ("USSG") and in the final

version of the PSR, determined that the defendant had a Total Offense Level of 15, with a Criminal History Category of V, resulting in an advisory sentencing range of 37 to 46 months imprisonment. The defendant does not object to this scoring (although he requests a downward variance to a sentencing range of 24 to 30 months), but the government contends that the proper Total Offense Level is 27, resulting in a sentencing range of 120 to 150 months. In addition, it requests an upward variance to 276 months (23 years) — the statutory maximum.[1]

The parties have presented evidence and argument relevant to the proper guideline range, and the issues are now ripe for decision.

As a first step in the sentencing process, a district court is required to correctly calculate the defendant's advisory Sentencing Guidelines range. *See Freeman v. United States,* 131 S. Ct. 2685, 2692 (2011) ("The Guidelines provide a framework or starting point . . . for the judge's exercise of discretion" in sentencing). The government has the burden of proving application of the contested sentencing factors by a preponderance of the evidence. *See* Thomas W. Hutchison, et al., *Federal Sentencing Law and Practice* 1869-71 (2013).

---

[1] The maximum statutory punishment for an inmate's unlawful possession of a narcotic drug (Count One) is 20 years. 18 U.S.C. § 1791(b)(1). Because Brown has been previously convicted of two drug offenses, his maximum imprisonment for possession of a controlled substance under 21 U.S.C. § 844(a) (Count Four) is three years.

There remain three contested issues. The first is whether the cross reference in USSG § 2P1.2(c) applies to increase the defendant's offense level.[2] The second is whether an aggravating role increase of two offense levels under USSG § 3B1.1(c) is appropriate. The final issue is whether a grouping enhancement under USSG § 3D1.4 should be imposed. These issues will be addressed *seriatim*, following my findings of fact.[3]

II.

As shown by the information set forth in the PSR, as well as the evidence before me at the hearing on the proper advisory guideline range, including testimony by Brown's codefendant Ashley Wilson, my findings of fact are as follows.

The defendant, then 32 years old, and Wilson, then age 18 and living in southern Ohio, developed a romantic relationship through prison correspondence and telephone conversations. They discussed her coming to visit him at USP Lee and he eventually asked her to bring him contraband. At some point thereafter she

---

[2] The references in this Opinion to the USSG are to the 2013 version.

[3] In his initial version of the PSR, the probation officer adopted the government's current position as to the applicability of the § 2P1.2(c) cross reference. The defendant duly objected to such application, and in his final version of the PSR, the probation officer agreed with the defendant's position. The defendant also objected to a proposed enhancement for obstructive conduct under USSG § 3C1.1 and the failure to grant a reduction for acceptance of responsibility under USSG § 3E1.1(a). The probation officer did not agree with these latter two objections, and the defendant has now withdrawn them.
-3-

Case 2:13-cr-00016-JPJ-RSB   Document 101   Filed 07/23/14   Page 3 of 17   Pageid#: 355

received a package mailed to her at her home, consisting of a baby blanket wrapped around a plastic bag containing 24 quarter-sized colored balloons, each about the same weight. She assumed that the balloons contained drugs, although she did not know the type. Brown did not tell her that the drugs were for his personal use and she did not know him to have a drug problem or use heroin.

Following Brown's directions, Wilson traveled to USP Lee on Friday, September 21, 2012, for visiting time with Brown. She brought all 24 balloons with her, hiding them in her panties. She had planned to put some of the balloons in her mouth prior to the visit, so that she could pass them to Brown by a kiss upon arrival. Under the prison's visiting rules, an inmate may be embraced and kissed once upon arrival and once when the visit ends. Because of her nervousness, she had not put any balloons in her mouth when she arrived. Brown was surprised, but tried to calm her down and with four minutes to go in visiting time, directed her to the bathroom, where she put three of the balloons in her mouth. When she returned, she and Brown kissed and she transferred the balloons to his mouth. She then left the prison. Brown drank some water and swallowed the balloons.

The plan had been that she would transfer the remaining balloons to him in the course of two additional visits over the weekend. When Wilson returned on Saturday, she was advised that Brown was not available because he was in a "dry cell." In fact, prison staff had become suspicious of the interaction between the

two in the visitation room[4] and had placed Brown in a special cell where he eventually defecated two of the balloons, which were determined to contain together 1.8 grams of heroin.[5]  Wilson was later interviewed by FBI agents, and eventually admitted her involvement.  She has pleaded guilty and is awaiting sentencing.

After charges were brought against both Brown and Wilson, Brown called her several times to discuss the case and at one point sent her a false affidavit for her to sign, which denied that she had passed him drugs.   She was also contacted by other people with connections to Brown, in a clear attempt to intimidate her and influence her testimony.

It is more likely than not that the total quantity of heroin contained in the 24 balloons that Brown planned to have smuggled to him by Wilson exceeded 20 grams, since they were all approximately the same size.  According to the testimony of a Bureau of Prisons investigator at USP Lee, Michael Blevins, which testimony I credit, this is a distribution quantity of heroin for prison inmates, rather than a user quantity.  Further, the facts in evidence show that Brown has no history

---

[4]  Wilson actually went to the bathroom three separate times, but only at the final visit did she get up the nerve to put the balloons in her mouth.  She was going to put four balloons in her mouth, but before doing so had noticed that one of the balloons appeared to have broken.  During the visit, Wilson appeared so nervous, and played with her hair to such an extent that Brown told her to stop it.

[5]  In other similar cases, inmates in the dry cell have defecated a balloon containing drugs, retrieved it without the knowledge of prison staff and re-swallowed it, although in this case Brown was in the dry cell for several days.

-5-

Case 2:13-cr-00016-JPJ-RSB   Document 101   Filed 07/23/14   Page 5 of 17   Pageid#: 357

in prison of drug use, although he claimed to the probation officer that he had been using heroin. As shown by the prison investigator's testimony, a gram of heroin at USP Lee typically sells among inmates for $1,200. Inmates pay for smuggled drugs through transfers of money into other inmates' prison accounts from the outside, or by transfers between individuals outside of prison.

III.

A.

The Sentencing Guidelines direct that the court must determine the appropriate guideline section applicable to the offense of conviction. USSG § 1B1.2. The guideline for providing or possessing contraband in prison in violation of 18 U.S.C. § 1791, is USSG § 2P1.2. That guideline section provides as follows:

> **§ 2P1.2. Providing or Possessing Contraband in Prison**
>
> **(a)** Base Offense Level:
>
> **(1)** 23, if the object was a firearm or destructive device.
>
> **(2)** 13, if the object was a weapon (other than a firearm or a destructive device), any object that might be used as a weapon or as a means of facilitating escape, ammunition, LSD, PCP, methamphetamine, or a narcotic drug.
>
> **(3)** 6, if the object was an alcoholic beverage, United States or foreign currency, a mobile phone or similar device, or a controlled substance (other than LSD, PCP, methamphetamine, or a narcotic drug).

**(4)** 4, if the object was any other object that threatened the order, discipline, or security of the institution or the life, health, or safety of an individual.

**(b)** Specific Offense Characteristic

**(1)** If the defendant was a law enforcement or correctional officer or employee, or an employee of the Department of Justice, at the time of the offense, increase by 2 levels.

**(c)** Cross Reference

(1) If the object of the offense was the distribution of a controlled substance, apply the offense level from § 2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking; Attempt or Conspiracy). *Provided*, that if the defendant is convicted under 18 U.S.C. § 1791(a)(1) and is punishable under 18 U.S.C. § 1791(b)(1), and the resulting offense level is less than level 26, increase to level 26.

The statute in question, 18 U.S.C. § 1791, provides in pertinent part as follows:

**(a) Offense.**--Whoever—

**(1)** in violation of a statute or a rule or order issued under a statute, provides to an inmate of a prison a prohibited object, or attempts to do so; or

**(2)** being an inmate of a prison, makes, possesses, or obtains, or attempts to make or obtain, a prohibited object;

shall be punished as provided in subsection (b) of this section.

**(b) Punishment.**--The punishment for an offense under this section is a fine under this title or—

**(1)** imprisonment for not more than 20 years, or both, if the object is specified in subsection (d)(1)(C) of this section;

**(d) Definitions.**--As used in this section—

**(1)** the term "prohibited object" means—

**(C)** a narcotic drug, methamphetamine, its salts, isomers, and salts of its isomers, lysergic acid diethylamide [LSD], or phencyclidine [PCP].

The defendant takes the position that the proper Base Offense Level under this guideline is 13, because 2P1.2(a)(2) is applicable to possession by an inmate of a narcotic drug, in this case, heroin. The government urges that the cross reference in 2P1.2(c) applies, on the ground that the evidence shows that the object of Brown's possession of heroin was its distribution within the prison. Thus, the government contends that the court must look to the appropriate drug guideline contained in USSG § 2D1.1. The government argues that because the evidence shows that at least 20 grams of heroin were involved in Brown's relevant conduct, the Drug Quantity Table, USSG § 2D1.1(c)(11), produces a Base Offense Level of 18. In addition, the government requests the court to apply the enhancement contained in USSG § 2D1.1(b)(4) ("if the object of the offense was the distribution of a controlled substance in a prison . . . increase by 2 levels.")

In regard to the application of the cross reference in USSG § 2P1.2(c), the defendant first argues that the government has not proved that the object of his offense was the distribution of the heroin. He contends that the government has no

-8-

proof that Brown planned to engage in the distribution of the drugs, or that he has engaged in drug distribution in the past at USP Lee.[6] In addition, he argues that Ashley Wilson's testimony is "untrustworthy" because she has been treated favorably by the government for her cooperation. (Def.'s Sentencing Mem. 7.)

To the contrary, I find that the government adequately proved by a preponderance of the evidence that Brown intended to distribute the heroin that he enlisted Wilson to bring to the prison. As noted above, the quantity involved — at least 20 grams — was a distribution amount. Brown did not testify at the hearing, and while he made a statement contained in the PSR that he was addicted to heroin while in prison, there is no other evidence that he has had any drug problem while incarcerated. Moreover, Brown's efforts to subvert justice in this case by his continuing efforts at intimidation of Wilson are cause to disbelieve him in any event.

Having had an opportunity to observe Wilson's testimony regarding the events in this case, which testimony was subjected to vigorous cross examination, as well as questioning by me, I find her to be a credible witness. As a young and immature person, she was clearly manipulated by Brown to engage in this serious and dangerous conduct. While Brown attempted to impeach her credibility by

---

[6] Of course, the reason that Brown is currently incarcerated is because of a drug trafficking conviction in the United States District Court for the Northern District of West Virginia in 2008. That drug trafficking involved oxycodone, rather than heroin. (PSR ¶ 28.)

evidence from her Facebook page showing that she has sought in the past to appear worldly, it's plain that she was in fact naive and easily persuaded by Brown.

In addition, the defendant argues that as a matter of law, even assuming that the object of Brown's possession of the heroin was to distribute it, the cross reference in USSG § 2P1.2(c) cannot apply. His reasoning is as follows: Since the second sentence of § 2P1.2(c)(1) is limited to those offenses punishable under 18 U.S.C. § 1791(b)(1), which proscribes a maximum 20-year sentence for possession of a narcotic drug and certain other particularly dangerous drugs, the first sentence must apply only to other, less dangerous, controlled substances and cannot apply to Brown's offense, which involved a narcotic drug. And since the second sentence of the cross reference is also limited to those convicted of violating 18 U.S.C. § 1791(a)(1), the "providing" crime, it cannot apply to Brown, who was charged and convicted under § 1791(a)(2), the "inmate possession" crime. Thus, the defendant argues, because neither sentence can apply to Brown, the cross reference is inapplicable to him.

No case authority supports the defendant's argument. The defendant relies on *United States v. Gregory*, 315 F.3d 637 (6th Cir. 2003). There an inmate's sister visited him in federal prison carrying three balloons filled respectively with cocaine, methamphetamine, and heroin. At some point during the visit, the sister spit the balloons into a cup and the inmate took the cup and swallowed its contents.

-10-

Case 2:13-cr-00016-JPJ-RSB   Document 101   Filed 07/23/14   Page 10 of 17   Pageid#: 362

This activity was observed by the prison staff and he was placed in a dry cell, where he defecated the balloons containing cocaine and methamphetamine. He was also treated for a heroin overdose, apparently resulting from the rupture of the third balloon after he swallowed it. The sister was charged with the "providing" crime under § 1791(a)(1); the inmate was charged with the "inmate possession" crime, § 1791(a)(2).

On a joint appeal by the defendants, the Sixth Circuit held that it was proper to apply the second sentence of the cross reference in USSG § 2P1.2(c) to the sister, since her single transfer to her brother constituted a "distribution," even in the absence of any evidence of what the brother intended to do with the drugs. *Gregory*, 315 F.3d at 643.

The cross reference was not applied to the inmate by the district court and in passing, the Sixth Circuit stated that it was "unclear" as to whether he could be sentenced under the cross reference. *Id.* The court noted that it did not make much difference in that case, in view of the small quantity of drugs involved, but suggested that with a larger amount of drugs, an inmate could receive a higher sentence by using the cross reference. *Id.* at 644.

The *Gregory* case does not help the defendant. The reason it was unclear to the court in that case as to whether the cross reference could be used for the inmate possessor of drugs was because there was no evidence, contrary to our case, that

the inmate intended to further distribute the drugs provided to him by his sister. In other words, if an inmate simply obtains drugs from a provider, is the object of the inmate's offense "distribution"? Whatever the answer to that question, it is not the pertinent question here.

Brown also relies on the legislative history of § 2P1.2. The first sentence of the present cross reference in 2P1.2(c)(1) was added by the Sentencing Commission in Amendment 525 to the USSG, effective November 1, 1995. USSG app. C, vol. I, at 449. That amendment did two things. It added methamphetamine to the list in § 2P1.2(a)(2) of contraband provided or possessed deserving of a Base Offense Level of 13, and it added the present first sentence of the cross reference. As its reason for adding the first sentence to the cross reference, the Sentencing Commission stated only that it "expands the cross reference in § 2P1.2(c) to cover distribution of all controlled substances in a correctional or detention facility." USSG app. C, vol. I, at 449.

This stated reason does provide a scintilla of support for the defendant's construction of the guideline, in that prior to the amendment, a defendant who was convicted of providing an inmate with a controlled substance other than a narcotic drug, LSD, or PCP, could not be sentenced using the drug guideline from § 2D1.1. That is because the unamended guideline required for its application that the defendant be punishable under 18 U.S.C. § 1791(b)(1), which was in turn limited

to the "hard" drugs mentioned.  On the other hand, the stated reason for the amendment does not exclude the additional purpose of extending the cross reference to both providers of drugs (§ 1791(a)(1)) and inmate possessors of drugs (§ 1791(a)(2)).

In short, while the language of the guideline (and the reasons for the amendment) might have been more explicit, its plain language covers Brown.  The plain language does not produce any irrational result, and in fact has the salutary effect of treating equally both the person who provides the drugs and the inmate who receives them.  It does not make the second sentence of the cross reference meaningless, since that sentence provides a minimum offense level for those persons providing hard drugs to inmates, regardless of the quantity.  While the cross reference does not provide a similar minimum offense level to the receiving inmate who intends to distribute, that is a policy decision within the province of the Sentencing Commission.

I find that Brown possessed heroin with the object of distributing it in the prison and accordingly the cross reference applies.  Applying that cross reference to 2D1.1, I must consider USSG § 1B1.3, with regard to relevant conduct.  In particular, the application note to that section provides that

> With respect to offenses involving contraband (including controlled substances), the defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of

> a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook.

USSG § 1B1.3 cmt. n.2. As I have found, Brown arranged for Wilson to deliver to him more than 20 grams of heroin. This is not a speculative drug quantity extrapolation, *see United States v. Hickman*, 626 F.3d 756, 770 (4th Cir. 2010) (holding determination of drug quantity unreliable where "evidence of unknown transactions was meager and offered virtually no guide as to the amounts that may have been involved"), but is based upon an actual transaction of known quantity. As I have found, the evidence — indeed, the only evidence — is that Brown arranged for 24 similar quarter-sized balloons to be smuggled to him, and that the actual drug weight of the two balloons recovered was 1.8 grams. Simple arithmetic is all that is necessary to determine that at least 20 grams were involved in Brown's crime. Such "conservative extrapolation" is "perfectly proper." *Id.* at 769.

For these reasons, I find that the appropriate Base Offense Level under the Drug Quantity Table, USSG § 2D1.1(c)(11), is Level 18. In addition, the Specific Offense Characteristic contained in USSG § 2D1.1(b)(4), providing for a two level enhancement, must be applied because the object of the offense was the distribution of a controlled substance in a prison.

B.

The government contends that Brown's Offense Level should be increased by two levels because of his role in the offense.[7] The Aggravating Role guideline provides as follows:

Based on the defendant's role in the offense, increase the offense level as follows:

**(a)** If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

**(b)** If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

**(c)** If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

USSG § 3B1.1.

The defendant disputes his eligibility for a two level enhancement on the grounds that only he and Wilson were involved and that because he was in prison, he could not exert control over her.

---

[7] The defendant objects to the court's consideration of this issue, as well as the one following, on the basis that the government failed to timely object to the PSR on these grounds. However, in my discretion I may allow a party to make a late objection. Fed. R. Crim. P. 32(i)(1)(D). The government presented these objections in a sentencing memorandum prior to the hearing and the defendant was fully prepared for them and suffered no prejudice. I normally allow late objections for defendants under these circumstances, including where present defense counsel is involved, and I see no reason not to afford the government the same consideration.

The fact that there is no evidence other than that only Brown and Wilson were involved in the crime does not insulate Brown from the application of a two-level enhancement under § 3B1.1(c). *See United States v. Figueroa,* 682 F.3d 694, 695 (7th Cir. 2012) (upholding two-level enhancement for defendant who told drug mule where to get drugs and where to meet with defendant to turn over the drugs and get paid). The Guidelines Manual provides that "[t]o qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of <u>one or more other participants</u>." USSG 3B1.1 cmt. n.2 (emphasis added).

Based upon the facts as I have found them, there is no question but that Brown organized the drug smuggling scheme and directed Wilson through it. Her only motive in carrying out his directions was to please him. Because of her submission and his domination, he controlled her activities, whether or not he was incarcerated. I find that the two-level role enhancement is appropriate.

C.

Finally, the government argues that the two counts of conviction cannot be grouped and thus a one level unit increase must be applied under the provisions of USSG § 3D1.4. However, because the application in this case of USSG § 3D1.2 produces one group of closely related counts, a unit increase does not apply. *See* §

-16-

3D1.3; § 3D1.4 cmt. n.1.  Accordingly, the government's objection on this ground is denied.

IV.

For the foregoing reasons, I find that the defendant has a Total Offense Level of 26, with a Criminal History Category of V, resulting in an advisory guideline custody range of 110 to 137 months,[8] with a fine range of $12,500 to $125,000.  There is also a statutory mandatory minimum fine of $5,000.  21 U.S.C. § 844(a).

It is so **ORDERED**.

ENTER: July 23, 2014

/s/  James P. Jones
United States District Judge

---

[8] I recognize that the parties are in agreement that the court may consider a two-level downward variance based upon the Sentencing Commission's announced reduction of the drug guidelines effective November 1, 2014.  Such a variance would produce a custody range of 92 to 115 months.